## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, 1615 H Street, N.W. Washington DC 20062, | ) ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| JACQUES SERVIN (aka ANDY BICHLBAUM aka HINGO SEMBRA), 1 Essex Street, Apartment 2B New York, New York 10002-4616; | ) ) ) ) ) ) |
| IGOR VAMOS (aka MIKE BONANNO), 51 3rd Street, Troy, New York 12180-3907; | ) ) ) ) |
| SUPPORT AND COMMITMENT, INC., 1 Essex Street, Apartment 2B New York, New York 10002-4616 and 51 3rd Street Troy, New York 12180-3907; | ) ) ) ) ) ) ) ) ) |
| DAVID SIEVERS, 5901 Walton Road Bethesda, Maryland 20817; | ) ) ) ) |
| MORGAN GOODWIN, 26 Barkeater Way Keene, New York 12942; | ) ) ) ) |
| SARAH MURPHY, 114 Currier Avenue Peterborough, New Hampshire 03458-1136; | ) ) ) ) ) |
| and JOHN and JANE DOES NOS. 1-20, | ) ) ) |
| Defendants. | ) ) |

Case No.: 1:09-cv-02014

**FIRST AMENDED
COMPLAINT
JURY TRIAL DEMANDED**

1

## FIRST AMENDEDCOMPLAINT

Plaintiff, The Chamber of Commerce of the United States of America, brings this action to seek redress for Defendants' fraudulent acts and misappropriation of its valuable intellectual property. Defendants had a common plan to engage in acts that violated multiple laws. These acts deceived the press and public, and caused injury to the Chamber, while promoting the commercial ventures of certain of the Defendants who trade under the name "The Yes Men." The acts are nothing less than commercial identity theft masquerading as social activism. These infringing and fraudulent acts are antithetical to public debate on important issues, because they prevent the public and the press from knowing the true position of the intellectual property owner whose trademarks and copyrights were used without permission, and they disguise the true motives of the persons who took that property. In short, such conduct is destructive of public discourse, and cannot be tolerated under the law.

## Nature of the Complaint

Plaintiff, Chamber of Commerce of the United States of America, by counsel, respectfully submits this Complaint against Defendants Jacques Servin (aka Andy Bichlbaum aka Hingo Sembra), Igor Vamos (aka Mike Bonanno), Support and Commitment, Inc., David Sievers, Morgan Goodwin, Sarah Murphy, and John and Jane Does Nos. 1-20 for (1) federal trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S. § 1125(a); (3) federal trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (4) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (5) cyberpiracy in violation of the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. §

2

1125(d); and (5) common-law unfair trade practices, publication of injurious falsehood and other torts, and civil conspiracy to commit all of the above offenses.

## PARTIES

1.     Plaintiff, Chamber of Commerce of the United States of America ("the Chamber"), is a not-for-profit business corporation organized under the laws of the District of Columbia, with its principal place of business in Washington, D.C. The Chamber's membership includes businesses of all sizes, sectors and regions, as well as state and local chambers and industry associations. The Chamber represents its members' interests on various issues presented to the executive, legislative and judicial branches of government.

2.     Defendant Jacques Servin is an individual who, upon information and belief, is a citizen of the State of New York. Defendant Servin conducts business through a company called "Support and Commitment, Inc." that trades under the name "Yes Men," and he uses the alias "Andy Bichlbaum" as well other aliases. Defendant Servin characterizes his business as "identity correction," which involves posing as the representative of a business or government entity for the purpose of misrepresenting the entity's positions to the public. Defendant Servin is also engaged in the business of making movies and operating commercial web sites where, among other things, merchandise is sold and his movies are promoted. Defendant Servin and co-defendant Igor Vamos (aka Mike Bonanno) are the directors of the movie "The Yes Men Fix The World," which was scheduled for commercial theatrical release on October 20, 2009.

3.     Defendant Igor Vamos is an individual who, upon information and belief, is a citizen of the State of New York. Defendant Vamos conducts business through a company called "Support and Commitment, Inc." that trades under the name "Yes Men," and he uses the alias "Mike Bonanno." Defendant Vamos is engaged in a business he characterizes as "identity

correction," in which he or other members of "Yes Men" pose as representatives of business or

government entities for the purpose of misrepresenting the entities' positions to the public.

Defendant Vamos is also engaged in the business of making movies and operating commercial

web sites where, among other things, merchandise is sold and his movies are promoted.

Defendant Vamos and co-defendant Jacques Servin are the directors of the movie "The Yes Men

Fix The World," which was scheduled for commercial theatrical release on October 20, 2009.

4.    Upon information and belief, Defendant Support and Commitment, Inc. is an alter

ego of Defendants Servin and Vamos, and a corporation through which Defendants Servin and

Vamos conduct or transact business.  The fake domain name "chamber-of-commerce.us," which

is described further below, was registered to Support and Commitment, Inc.

5.    Defendant David Sievers is an individual who, upon information and belief, is a

citizen of the State of Maryland.  Upon information and belief, Defendant Sievers is an organizer

for, or is otherwise associated with, "Action Factory," which was previously known as "Avaaz

Action Factory."  Upon information and belief, "Action Factory" assisted the conduct of the

"Yes Men" described below, and operates a web site which has promoted the conduct of the

Defendants described below.

6.    Defendant Morgan Goodwin is an individual associated with "Action Factory"

and serves as its contact for New Media inquiries.  Upon information and belief, Defendant

Goodwin assisted the conduct of the "Yes Men" described below, and made postings on Action

Factory's web site, and "Tweets" on Twitter, that promoted the conduct of the other Defendants

described below.

7.    Defendant Sarah Murphy is an individual associated with "Action Factory," Upon

information and belief, Defendant Murphy assisted the conduct of the "Yes Men" described

4

below, helped plan the fraudulent press conference described below, and impersonated a representative of the news media at the fraudulent press conference.

8.      Defendants John and Jane Does Nos. 1-20 are individuals whose identities are currently unknown to the Chamber.  Defendants John and Jane Does Nos. 1-20 are employed by, act on behalf of, or operate under the names of the Yes Men, Avaaz, Action Factory, BeyondTalks.net, and/or other organizations engaged in wrongful efforts against Plaintiff.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to: (i) 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and 15 U.S.C. § 1121, for claims arising out of violations of Sections 32(1), 43(a), 43(c) and 43(d) of the Lanham Act; and (ii) 28 U.S.C. § 1367, pursuant to the principles of supplemental jurisdiction.

10.     This Court has personal jurisdiction over each of the Defendants because each Defendant either resides in the District of Columbia or is subject to personal jurisdiction in the District of Columbia pursuant to D.C. Code § 13-423.  The claims asserted in this Complaint all arise from Defendants transacting business in the District of Columbia and causing tortious injury in the District of Columbia.  The tortious injury in the District of Columbia was caused by Defendants' acts or omissions in the District of Columbia or by acts or omissions outside the District of Columbia by Defendants who regularly do and solicit business, engage in a persistent course of conduct, and derive substantial revenue from goods consumed and services rendered, in the District of Columbia.

11.     Venue in this district is proper under 28 U.S.C. § 1391(b) & (c), because, among other things, Defendants have infringed and are infringing Plaintiff's marks here, and one or more of the co-conspirators is subject to jurisdiction here.  Venue is also proper under 28 U.S.C.

§ 1391, in that a substantial part of the events giving rise to this action occurred in this judicial district.

## FACTUAL BACKGROUND

### DEFENDANTS' COMPREHENSIVE SCHEME TO PROMOTE THEIR MOVIE BY WRONGDOING DIRECTED AGAINST PLAINTIFF

12.     Defendants Servin and Vamos are actors, screenwriters, directors, and entrepreneurs whose ventures include multiple web sites, blogs, an online store, a book, and two motion pictures.  Whether operating under one of their many individual aliases or collectively as the "Yes Men," the tactics of Servin and Vamos are designed to drive business to their ventures and generate sales of merchandise, including t-shirts ($20.00), DVD's of their 2004 movie, "The Yes Men" ($20.00), the *Yes Men* book -- signed by the authors -- ($14.95), and movie posters ($20.00).  For those inclined to purchase, the Yes Men's store accepts MasterCard, Visa, American Express, and Diner's Club.

13.     Defendant Servin's and Defendant Vamos' latest venture is the movie, "The Yes Men Fix the World," which they wrote and directed and in which they star.  Defendants Servin and Vamos advertise their new movie as a "true story" about how they "lie their way into big business conferences."  After a limited U.S. release on October 7, 2009, the movie was released nationwide on October 20 and started showing at a theater in Washington, D.C., on October 23, 2009.  The movie is also currently playing in the U.K.  In a recent interview, Defendant Servin stated that he and Defendant Vamos have already received significant payments for their new movie, including $400,000 from HBO and $100,000 from a British source.

14.     Defendants Servin and Vamos promote their movie through numerous online means, including multiple websites, such as <www.yesmen.org>, <www.theyesmenfixtheworld

.com>, and <challenge.yesmen.org>, their Facebook page <http://www.facebook.com/pages/
The-Yes-Men/96761506615>, Twitter <http://twitter.com/theyesmen/>, their blog
<http://theyesmen.org/blog>, and an e-flier <http://theyesmenfixtheworld.com/eflier/>. By
generating publicity for themselves, Defendants Servin and Vamos drive traffic to these sites,
which function as both advertisements and transactional processing points, driving sales of
movie tickets and their merchandise.

15.    Just one day before the national release of "The Yes Men Fix The World," and
four days before its release in Washington, D.C., Defendants Servin and Vamos executed a
comprehensive scheme to promote their movie, and increase sales of tickets and merchandise.
This scheme included (1) conducting a fraudulent press conference at the prestigious "National
Press Club" in Washington D.C., during which Defendant Servin impersonated an executive or
representative of the Chamber, used the Chamber's logo and service marks without
authorization, and fraudulently attributed statements to the Chamber, (2) issuing fraudulent
prepared statements and a press release using the Chamber's marks without authorization, and
fraudulently attributing statements to the Chamber and its President; (3) referring members of the
public to a website, the first pages of which are nearly identical to the Chamber's actual web site,
which uses the Chamber's marks and copyrighted material without authorization, and which
fraudulently attributes statements to the Chamber and its President; and (4) conducting a series of
follow-on interviews ostensibly about the press conference event, in which they promoted their
movie release.

16.    In all aspects of this systematic scheme to promote their movie, generate sales of
merchandise and tickets, and damage the Chamber, Defendants Servin and Vamos and others
acting in concert with them used, without the Chamber's authorization or consent, the marks

U.S. CHAMBER OF COMMERCE®, THE SPIRIT OF ENTERPRISE®, and Eagle and Stars

Design.  Further, during all aspects of this fraudulent scheme, Defendants Servin, Vamos and

others acting in concert with them misrepresented their affiliation, services, and activities, as

well as the activities and statements of the Chamber.

17.     Defendant Sievers has admitted that the plan to conduct the fraudulent press

conference resulted from discussions among representatives of the Yes Men, an organization

called "Action Factory DC," and "BeyondTalk.net."  Defendant Murphy has admitted that she is

one of the individuals who helped plan the fraudulent press conference.

18.     The domain name BeyondTalk.net was registered on May 29, 2009, through a

company in Switzerland.  The contact person is listed as "Harold Schweppes" located at "80

Infinity Place, Son of Triumph, Pennsylvania."  On information and belief, both the name and

address are fictitious.  The domain name used to promote Defendant Servin's and Defendant

Vamos's  new movie, "The Yes Men Fix the World," was registered a day earlier through the

same Swiss company, and the same fictitious contact person and address are listed on that

registration as well.

19.     On October 16, 2009, on information in belief, Defendants Servin or Vamos or

someone acting in concert with them registered the domain name "chamber-of-commerce.us".

To conceal their identity and plan, the domain name was registered to "Support and

Commitment, Inc." through a company located in France called GANDI.net and a non-existent

New York, New York billing address was used.  The administrative contact for the domain name

is "hschweppes1957@gmail.com."

20.     This domain name was used for a web site that appears identical to that of the

Chamber, but contains a fake "Speeches" page and a fake "Press Releases" page.  These two

pages contain statements fraudulently attributed to the Chamber and its president, and the pages

can be downloaded, printed and further disseminated. The two pages use the Chamber's logo and

service mark without permission and fraudulently claim a 2009 Chamber copyright at the bottom

of each page. Moreover, rather than create a parody site that resembles the Chamber's site, the

fraudulent pages copy embedded software elements from the Chamber's web site -- including

JavaScript calls related to Microsoft CMS (even though the fraudulent site does not run

Microsoft CMS). This ensures that if a visitor "clicks" any links on the fraudulent pages they are

taken to the authentic Chamber web site. This painstaking, sophisticated design is aimed at

concealing the fraudulent nature of the "Speeches" and "Press Releases" page. Members of the

public who went to the web site <www. chamber-of commerce.us> would have no idea that they

were visiting a fraudulent site, rather than the Chamber's legitimate site. As a result, legitimate

news organizations, including Reuters, the New York Times, the Washington Post, CNBC and

Fox Business Network, relied on the fraudulent press release and/or "prepared comments" on the

web site to publish news reports, which they then had to retract.

21.     After creating the fraudulent web site that incorporated the fraudulent press

release and comments, the next step in Defendants' plan was to hold a press conference

impersonating the Chamber. To lend credibility to this fraudulent press conference, Defendant

Sievers secured a room at the prestigious "National Press Club" paying by credit card. Based on

his representations, the National Press Club listed on its schedule for October 19, 2009, at 11:00

a.m. a press conference by the "U.S.C. of C" -- the abbreviation USCOC was typically used by

the National Press Club for Chamber events -- in the "Zenger Room." The schedule listed Erica

Avidus as the contact person, which was the same name listed as the contact person on the

fraudulent press release. Upon information and belief, this is a fictitious person. Calls to this

contact number went to a voicemail with the fraudulent greeting, "You have reached Erica Avidus at the Chamber. Please leave a message."

22.     Commencing on or about October 16, 2009, Defendants contacted or caused to be contacted members of the media to announce the press conference. Then, on the morning of the press conference, Defendant Goodwin or another Defendant used the Action Factory web site to post a notice stating "we're going to make this the worst Monday ever for the anti-climate PR machine at the US Chamber of Commerce." The notice also called on readers to mount a "mass phone/email jam" against the Chamber between the hours of 9:30 a.m. and noon, by calling specific telephone numbers at the Chamber "[as] many times as you can" and by sending emails to specific email addresses at the Chamber. The hours set for the "mass phone/email jam" overlapped the time for the fraudulent press conference, which was scheduled to begin at 11:00 a.m.

23.     As a result of Defendants' actions, representatives of the news media, including reporters from the Washington Post, Reuters, Greenwire and Mother Jones, appeared at the National Press Club on October 19, 2009, for the fraudulent press conference. As members of the media arrived at the Zenger Room, they saw the room prepared for a press conference. The podium at the front and center of the room displayed the Chamber's logo and marks. To further perpetuate their fraud, Defendants seeded the room with fake "reporters," including Defendant Murphy, who misrepresented herself as being from the Huffington Post. On a table at the back of the room were what purported to be copies of a press release from the Chamber and prepared statements of the Chamber's president. Though both documents were on Chamber letterhead and clearly displayed the Chamber's logo and service marks, the documents were frauds, prepared by Defendants, not the Chamber. Copies of the fraudulent release were also emailed to

members of the media.  Upon information and belief, all of the legitimate reporters attended the

press conference in the belief that it was being held by the Chamber, except for the reporter from

Mother Jones, who had been tipped off in advance that the press conference was a fraud and that

the Action Factory had participated in planning the fraud.

24.     The press release, using the Chamber's logo and other formatting, was

sufficiently confusing to cause certain members of the press to believe that it was authentic.  As

CNBC Washington correspondent Hampton Pearson later explained (after the press release was

revealed by the Chamber to be a hoax), "It looked authentic, if you will . . . . It has the Chamber's

logo that we're all very familiar with, even the boilerplate at the end of a typical Chamber of

Commerce news release."

25.     At about 11:00 a.m., Defendant Servin took the podium.  Impersonating an

executive or representative of the Chamber, and identifying himself by the alias "Hingo

Sembra," he began to ostensibly represent the Chamber's position on climate change legislation

and answered questions from those present.  At some point an executive from the Chamber

entered the room, having just learned of the fraudulent event, and announced that Defendant

Servin had no connection to the Chamber and that he was not authorized to state the Chamber's

position or state his own positions as those of the Chamber.  Rather than admit his fraud,

Defendant Servin challenged the credentials of the Chamber executive and continued his fraud.

26.     Defendants Servin or Vamos made preparations to ensure that the event was

recorded.  They enlisted award-winning independent film maker Brandon Jourdan, portions of

whose high-quality video of the fraudulent press conference have since been posted on numerous

sites on the web, including on YouTube and on a page maintained by "Evil Twin Booking

Agency," an agency that manages appearances for speakers and performers, including

Defendants Servin and Vamos.  This recording of the fraudulent press conference is similar to

Defendant Servin's and Defendant Vamos' prior practice of recording fraudulent appearances for

the purpose of including them in commercial motion pictures.  Upon information and belief,

Defendant Servin's and Defendant Vamos' most recent motion picture includes footage of an

earlier "hoax," in which Defendant Severn impersonated an executive from another company for

the purpose of making fraudulent statements concerning an event.

27.     The day after the fraudulent press conference and the call for a "mass phone/email

jam" of the Chamber, Defendant Goodwin or another Defendant used the Action Factory web

site to announce: "Its been a pretty busy week for us.  Running around DC to help the Yes Men

with some amazing activism . . . ."

28.     After the event concluded, Defendants hit the publicity trail giving interviews,

*inter alia*, to MSNBC, NPR, CNN, The New York Times, Mother Jones, Dow Jones Newswire,

and Market Wire.  On October 21, 2009, Defendant Vamos, using his "Mike Bonanno" alias,

was interviewed on MSNBC television while a banner appeared at the bottom of the screen

announcing: "'THE YES MEN FIX THE WORLD' IS NOW IN THEATERS."  At the

conclusion of the interview, Defendant Vamos stated the "movie is called the Yes Men Fix The

World . . . and you can see where it's playing at yesmenfixtheworld.com."

29.     During these publicity interviews, Defendants' statements made clear that,

through the above-described acts, they had intended to impersonate the Chamber, fraudulently

attribute their own statements to the Chamber, and damage the Chamber.  As Defendant Servin

explained to the New York Times, "We're not about credibility. . .We're comedians, basically. . .

It's all theater."  Defendant Servin has acknowledged that some lawyers advised him against such

hoaxes, warning of the legal implications of fraud, but he concluded that it was "a risk worth taking."

30.    The fraudulent site is still active and since its launch, thousands of people have landed on the fraudulent site before being referred to the Chamber's authentic site.  In response to a request by the Chamber's counsel that the host remove the fraudulent website, Defendants Servin and Vamos refused to take down the site and retained an advocacy group called the Electronic Frontier Foundation, which, on October 23, 2009, threatened legal action against the Chamber.  In addition, Defendants Servin and Vamos and, upon information and belief, Support and Commitment, Inc. caused to be "mirrored" the fraudulent web site late on the night of October 22, 2009 and early the morning of October 23, 2009, and relocated it from one host to a new host in an electronic game of "cat and mouse."  The Electronic Frontier Foundation also modified its own web site on October 23, 2009 to include links to Defendants' newly relocated fraudulent web site, so that readers of the Electronic Frontier Foundation web site could "click" directly into Defendants' fraudulent web site.

31.    On October 23, 2009, Defendants Servin and Vamos issued another press release, this time under the name of the Yes Men, which stated:  "US Chamber Shuts off TheYesMen.org and Websites of Hundreds of Other Activist Groups."  The Yes Men press release also asserted that the alleged shut-down of websites "impinge on the ability of . . . small businesses to turn a profit" because independent movie theaters "are heavily dependent on the Yes Men web site for selling tickets to the [Yes Men's new] film."  This press release was fraudulent and, upon information and belief, the alleged shut-down of websites was planned and orchestrated by Defendants, with the cooperation of May First/People Link, for publicity purposes.  Mr. Benny Ng of Hurricane Elecric, the original upstream service provider, has told a reporter that he shut

down an unspecified number of web sites in response to a letter from the Chamber's counsel and subsequent discussions with MayFirst, and that the sites were only down for approximately one hour. The letter from Chamber's counsel had only asked that two web pages be taken down -- www.chamber-of-commerce.us/090118tjd. prosperity.html and www.chamber-of-commerce.us/091019enterprise.html -- which are the two pages from the above-described fraudulent web site that Defendants used to publish the fraudulent press release and "public comments" that infringe the Chamber's trade marks and copyrights.

32.    Over the weekend of October 23, 2009, Defendant Servin appeared in Washington, D.C., to promote his and Defendant Vamos' new movie and their overall impersonation venture. He appeared at a movie theater all day on Sunday, October 25, answering questions from the audience after each commercial showing of "The Yes Men Fix The World."

33.    Defendants have continued to use the Chamber as a means of promoting sales of tickets to the Yes Men's latest movie. During the week of November 1, 2009, the Yes Men posted the following message on Facebook to encourage ticket sales in Los Angeles: "Fix the World opens in LA this weekend! Support independent cinema under attack from greedy US Chamber of Commerce." Defendants also used a Tweet on Twitter, using the same words, to draw web traffic to the Facebook page.

34.    Defendants' scheme has caused harm to the reputation and goodwill of the Chamber. In addition, the Chamber has incurred monetary damages by, *inter alia*, spending time and money placing a notice on its web site so that visitors will know they were referred from the fraudulent web site, and by incurring investigative expenses and legal expenses requesting that the hosters of the fraudulent web site take it down.

35.     In planning and conducting their activities against the Chamber, Defendants entered into an agreement to participate in one or more unlawful acts, or one or more lawful acts in an unlawful manner, to cause injury to the Chamber.  Pursuant to that agreement, and in furtherance of Defendants' common scheme, one or more of the Defendants engaged in overt unlawful acts that caused injury to the Chamber.  The overt acts included, but were not limited to, (a) the infringement of the Chamber's trademarks, (b) the creation, operation and maintenance of a fraudulent web site, (c) the publication and distribution of the fraudulent press release, (d) the publication and distribution of the fraudulent "full prepared comments" attributed to the Chamber's President, (e) the October 19, 2009 "press conference"; and (f) the various actions by [Avaaz] Action Factory, BeyondTalk.net, MayFirst/People Link, and various of their associates to promote the above-described acts.  By virtue of their participation in the conspiracy, Defendants are liable to the Chamber for the harm caused by their own actions and by the actions of their co-conspirators.

## THE CHAMBER OF COMMERCE AND ITS MARKS

36.     Since 1912 the Chamber has represented the interests of businessmen and women on major issues affecting business.

37.     The goodwill and reputation that the Chamber has earned over nearly a century of promoting and defending free enterprise and economic opportunity are critical to the Chamber's mission.  The goodwill and reputation of the Chamber are embodied in its famous, and federally protected, marks U.S. CHAMBER OF COMMERCE®, THE SPIRIT OF ENTERPRISE®, and its Eagle and Stars Design mark.

38.     The Chamber owns a domain name that incorporates its U.S. CHAMBER OF COMMERCE® mark.  It uses this domain name in connection with its principal web site and its

monthly national membership publication.  At the website, the Chamber features its marks U.S. CHAMBER OF COMMERCE®, THE SPIRIT OF ENTERPRISE®, and Eagle and Stars Design mark.  It also provides descriptions of its positions on issues of interest to its members, policy initiatives, current programs, and a wealth of information useful to businesses of all types and sizes.

39.     The Chamber uses U.S. CHAMBER OF COMMERCE®, THE SPIRIT OF ENTERPRISE®, and Eagle and Stars Design marks in all aspects of its mission, and features these marks in many different media, including press releases, studies and reports, newsletters, print media, direct mail, television advertisements, print advertisements, and the Internet

40.     The Chamber has used the U.S. CHAMBER OF COMMERCE® mark in commerce to promote the interests of businessmen and women since 1915.  The mark is subject to a valid and subsisting registration:  U.S. Reg. No. 1,522,157.  Exhibit 1 is a true and correct printout of the U.S. Patent and Trademark Office web site showing this registration.

41.     The Chamber has used THE SPIRIT OF ENTERPRISE® mark in commerce to promote the interests of businessmen and women since 1981.  The mark is subject to a valid and subsisting registration:  U.S. Reg. No. 1,588,136.  Exhibit 2 is a true and correct printout of the U.S. Patent and Trademark Office web site showing this registration.

42.     The Chamber has used the Eagle and Stars Design mark in commerce since 1985.  The mark is subject to a valid and subsisting registration:  U.S. Reg. No. 1,586,228.  Exhibit 3 is a true and correct printout of the U.S. Patent and Trademark Office web site showing this registration.

43.     The Chamber's longstanding registrations of its marks put the Defendants on constructive notice of its exclusive nationwide rights in these marks, as set forth in Section 22 of the Lanham Act.  15 U.S.C. § 1072.

44.     The U.S. CHAMBER OF COMMERCE®, THE SPIRIT OF ENTERPRISE®, and Eagle and Stars Design marks are inherently distinctive.  In addition, through many years of widespread use, promotion, and recognition, these marks have acquired strong secondary meaning and have become famous throughout the United States.

## COUNT I
### (Trademark Infringement under the Lanham Act)

45.     The preceding paragraphs of this Complaint are incorporated by reference herein.

46.     The Chamber owns valid and subsisting rights in its federally registered marks U.S. CHAMBER OF COMMERCE®, THE SPIRIT OF ENTERPRISE®, and Eagle and Stars Design mark.

47.     During their campaign to promote a movie and damage the goodwill and reputation of the Chamber, Defendants used marks that incorporate elements of or were identical to the Chamber's federally registered marks U.S. CHAMBER OF COMMERCE®, THE SPIRIT OF ENTERPRISE®, and Eagle and Stars Design marks.

48.     Defendants' marks are likely to cause confusion, or to cause mistake, or to deceive, constituting infringement of the Chamber's federally registered marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

49.     Defendants have adopted and used, and are continuing to use, their infringing marks with constructive and actual knowledge of the Chamber's prior rights, with the intent to cause confusion, and in bad faith.

50.     The Chamber has no adequate remedy at law to address Defendants' infringement.  The Chamber has been, and absent injunctive relief, will continue to be, irreparably harmed by Defendants' actions.  The Chamber is entitled to preliminary and permanent injunctive relief against Defendants.  The Chamber is also entitled to Defendants' profits and its damages, trebled, and to reasonable attorney's fees and costs, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

51.     Defendants' conduct also constitutes counterfeiting under 15 U.S.C. § 116(b) which entitles the Chamber to three times Defendants' profits or its damages as well as attorneys fees under 15 U.S.C. § 1117(b).

52.     Even if each Defendant did not personally commit this Lanham Act violation, the violation was committed pursuant to and in furtherance of a civil conspiracy among all Defendants, and all Defendants are liable for such violation.

## COUNT II
### (Unfair Competition under the Lanham Act)

53.     The preceding paragraphs of this Complaint are incorporated by reference herein.

54.     The Chamber owns valid and subsisting rights in its marks U.S. CHAMBER OF COMMERCE®, THE SPIRIT OF ENTERPRISE®, and Eagle and Stars Design mark, and it uses those marks in interstate commerce.

55.     By using those marks and by committing other acts, Defendants are engaging in false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56.     Defendants have adopted and used, and are continuing to use, their identical and confusingly similar marks with actual knowledge of the Chamber's prior rights, with the intent to cause confusion, and in bad faith.

57.     The Chamber has no adequate remedy at law to address Defendants' unfair competition.  The Chamber has been, and absent injunctive relief, will continue to be, irreparably harmed by Defendants' actions.  The Chamber is entitled to preliminary and permanent injunctive relief against Defendants.  The Chamber is also entitled to Defendants' profits and the Chamber's damages, trebled, and to reasonable attorney's fees and costs, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

58.     Even if each Defendant did not personally commit this Lanham Act violation, the violation was committed pursuant to and in furtherance of a civil conspiracy among all Defendants, and all Defendants are liable for such violation.

<u>**COUNT III**</u>
**(Trademark Dilution under the Lanham Act)**

59.     The preceding paragraphs of this Complaint are incorporated by reference herein.

60.     By virtue of the Chamber's prominent, longstanding, and continuous use of its marks U.S. CHAMBER OF COMMERCE®, THE SPIRIT OF ENTERPRISE®, and Eagle and Stars Design mark in interstate commerce, these marks became famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

61.     By using Plaintiff's marks, Defendants are diluting and are likely to dilute Plaintiff's marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

62.     Defendants' use of Plaintiff's marks without the authorization or consent of the Chamber causes blurring by reducing the capacity of those marks to identify and distinguish the Chamber's programs and services.

63.     Defendants' use of Plaintiff's marks without the authorization or consent of the Chamber causes tarnishment by associating those marks with Defendants, whose positions and tactics are inconsistent with positions and conduct of the Chamber, its members, and prospective members.

64.     Defendants have adopted and used, and are continuing to use, their dilutive marks with actual knowledge of the Chamber's prior rights, with the willful intent to trade on the recognition of the Chamber's marks U.S. CHAMBER OF COMMERCE®, THE SPIRIT OF ENTERPRISE®, and Eagle and Stars Design marks, and with the willful intent to harm the reputation of those famous marks.  The Chamber is entitled to injunctive relief against Defendants, pursuant to Sections 43(c)(1), 43(c)(5), and 34 of the Lanham Act.  15 U.S.C. §§ 1125(c)(1), 1125(c)(5), and 1116.

65.     The Chamber is entitled to treble damages and reasonable attorney's fees and costs as a result of Defendants' willful conduct.

66.     Even if each Defendant did not personally commit this Lanham Act violation, the violation was committed pursuant to and in furtherance of a civil conspiracy among all Defendants, and all Defendants are liable for such violation.

## COUNT IV
### (False Advertising under the Lanham Act)

67.     The preceding paragraphs of this Complaint are incorporated by reference herein.

68.     Defendants have, in commercial advertising and promotion, misrepresented in interstate commerce the nature, characteristics or qualities of their services and/or commercial activities, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69.     Defendants' violations of 15 U.S.C. § 1125(a) are intentional and willful, and entitle the Chamber to recover from Defendants Plaintiff's damages or Defendants' profits in an amount to be determined at trial.

70.     Defendants' intentional and willful violations of 15 U.S.C. § 1125(a) entitle the Chamber to recover its reasonable attorneys' fees in an amount to be determined at trial.

71.     Defendants' actions are causing the Chamber to suffer irreparable harm. Specifically, Defendants' action is damaging the reputation and goodwill of the Chamber, for which there is no adequate remedy at law.

72.     Unless and until Defendants' actions are enjoined, the Chamber will continue to suffer irreparable harm and damages.

73.     Even if each Defendant did not personally commit this Lanham Act violation, the violation was committed pursuant to and in furtherance of a civil conspiracy among all Defendants, and all Defendants are liable for such violation.

## COUNT V
### (Cyberpiracy under the Lanham Act)

74.     The preceding paragraphs of this Complaint are incorporated by reference herein.

75.    Defendants' conduct, as described above, has been undertaken with the bad faith intent to profit from or with the intent to tarnish or disparage the distinctive and famous mark U.S. CHAMBER OF COMMERCE®.

76.    Defendants have registered, trafficked in, and used the domain name <www.chamber-of-commerce.us>.  That domain name is confusingly similar to, or dilutive of the mark U.S. CHAMBER OF COMMERCE®.

77.    Defendants' actions, as alleged herein, constitute actual and threatened violations of the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. §1125 (d).

78.    Defendants' violations are willful and in bad faith.  The Chamber is entitled to recover Defendants' profits, the Chamber's damages, trebled, and reasonable attorneys fees and costs pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a).  The Chamber may instead elect to recover statutory damages of not less than $1,000 and not more than $100,000 under 15 U.S.C. § 1117(d).

79.    Even if each Defendant did not personally commit these violations, the violations were committed pursuant to and in furtherance of a civil conspiracy among all Defendants, and all Defendants are liable for such violations.

## COUNT VI
### (Unlawful Trade Practices)

80.    The preceding paragraphs of this Complaint are incorporated by reference herein.

81.    Defendants' conduct, as alleged herein, constitutes a violation of the District of Columbia Consumer Protection Procedures Act, DC ST § 28-3904, because Defendants, among other things, have (a) represented that they have a sponsorship, approval, status, affiliation,

certification, or connection to the Chamber which they do not have; (b) misrepresented material facts; and (c) failed to state material facts, which had the tendency to mislead.

82.     The Chamber has no adequate remedy at law for the foregoing wrongful conduct. The Chamber has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

83.     The Chamber is entitled to its damages, exemplary damages, reasonable attorney's fees and costs as a result of Defendants' willful conduct.

84.     Even if each Defendant did not personally commit these unlawful trade practices, the unlawful practices were committed pursuant to and in furtherance of a civil conspiracy among all Defendants, and all Defendants are liable for such unlawful practices.

## COUNT VII
### (Publication of Injurious Falsehood)

85.     The preceding paragraphs of this Complaint are incorporated by reference herein.

86.     Defendants published, without privilege, false statements and representations concerning the Chamber, and the services the Chamber provides its members, that were harmful to the interests of the Chamber.  These false statements and representations included, but were not limited to:

> a.     Defendant Servin's statement that he represented the Chamber at the October 19, 2009 press conference.
>
> b.     Defendants' representation, through the use of the Chamber's name, logo and press release formatting, and by mimicking the

Chamber's web site, that the fraudulent press release was issued by the Chamber.

c.    Defendants' statement, in the fraudulent press release, that the Chamber had announced "an immediate moratorium on lobbying and publicity work."

d.    Defendants' statement, in the October 23 Yes Men Press Release, that the Chamber shut down the web site <www.yesmen.org> and the web sites of hundreds of activists groups.

87.    Defendants intended their unprivileged publication of the false statements to result in harm to the pecuniary interests of the Chamber and recognized, or should have recognized, that publication of the statements were likely to cause such harm.

88.    Defendants published the false statements with knowledge that the statements were false, or acted with reckless disregard of their truth or falsity.

89.    As a direct and proximate result of Defendants' false statements, the Chamber has suffered pecuniary loss, including, but not limited to, (a) the cost of legal and investigative fees incurred in identifying and contacting the host of the web site on which Defendants published their fraudulent statements, and (b) the cost incurred for Chamber personnel to investigate and address Defendants' fraudulent press conference and publications.

90.    Defendants are liable to the Chamber for publication of injurious falsehoods, and for all damages resulting from such publications.

91.     Even if each Defendant did not personally publish an injurious falsehood, the injurious falsehoods were published pursuant to and in furtherance of a civil conspiracy among all Defendants, and all Defendants are liable for such falsehoods.

## COUNT VIII
### (Prima Facie Tort)

92.     The preceding paragraphs of this Complaint are incorporated by reference herein.

93.     By their actions described above, Defendants have, without any excuse or justification, intentionally inflicted harm on the Chamber which has resulted in special damages. The special damages include, but are not limited to, (a) the cost of legal and investigative fees incurred in identifying and contacting the host of the web site on which Defendants published their fraudulent statements, and (b) the cost incurred for Chamber personnel to investigate and address Defendants' fraudulent press conference and publications.

94.     Upon information and belief, Defendants' tortious actions against the Chamber included planning and actions conducted in the State of New York.

95.     Defendants are liable to the Chamber for prima facie tort, and for all damages resulting from the actions described above.

96.     Even if each Defendant did not personally commit a prima facie tort against the Chamber, the prima facie tort was committed pursuant to and in furtherance of a civil conspiracy among all Defendants, and all Defendants are liable for such tort.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against Defendant and an award of the following relief:

25

a.    An injunction against Defendants that:

        i.    Prohibits Defendants from identifying themselves as representatives of the Chamber;

        ii.    Prohibits Defendants from publishing documents in or under the name of the Chamber or the name of any representative of the Chamber;

        iii.    Prohibits Defendants from using trade names, trademarks, logos or copyrights belonging to, or purporting to be those of, the Chamber;

        iv.    Prohibits Defendants from publishing or distributing videotape or audiotape of the October 19, 2009 "press conference" on the internet, in commercial theatrical distribution, or otherwise;

        v.    Requires Defendants to remove from the internet, including from internet sites operated by themselves and MayFirst/People Link, by Action Factory, by Evil Twin Booking Agency, Inc., and by Brandon Jourdon, all recordings of the October 19, 2009 "press conference," all copies of the "press release" they issued in the name of the Chamber, and all copies of the "full prepared comments" that they issued in the name of the Chamber;

vi.     Requires Defendants to take all steps necessary to dismantle and prevent public access to the web sites currently at www.chamber-of-commerce.us/091019enterprise.html and www.chamber-of-commerce.us/090118tjdprosperity.html;

vii.     Requires Defendants to transfer to Plaintiff ownership and registration of the domain name "www.chamber-of-commerce.us";

viii.     Prohibits Defendants from using, copying, or distributing to others the source code from the Chamber's web site;

ix.     Requires Defendants to deliver all existing copies of the following materials to Plaintiff:  (a) video and audio recordings of the October 19, 2009 "press conference," (b) the "press release" that Defendants issued in the name of the Chamber, and (c) the "full prepared comments" that Defendants issued in the name of the Chamber.

b.     Declaratory relief consistent with the above.

c.     An award of Defendants' profits.

d.     An award of damages in an amount to be determined at trial, trebled.

e.      An award of attorneys' fees and costs.

f.      Such other relief as may be appropriate.

Plaintiff demands trial by jury.


Dated: November 6, 2009


HUNTON & WILLIAMS, LLP

RICHARD L. WYATT, JR.
(D.C. Bar No. 424775)
MICHAEL J. MUELLER
(D.C. Bar No. 412025)
THOMAS M. HUGHES
(D.C. Bar No. 460134)
WILLIAM E. POTTS, JR.
(D.C. Bar No. 945824)
1900 K Street, NW
Washington, DC 20006
Tel: 202-955-1500
Fax: 202-778-2201

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic mail and U.S. Mail postage pre-paid this 6th day of November, 2009 upon:

Matthew Zimmerman, Esq.
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, California 94110
*Counsel for Defendants Jacques Servin, Igor Vamos,*
*Support and Commitment, Inc., David Sievers, and*
*Morgan Goodwin*

By: _____

# EXHIBIT 1

 **United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Oct 24 04:01:50 EDT 2009*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout | Please logout when you are done to release system resources allocated for you.

Start | List At: ____ OR Jump to record: ____ **Record 9 out of 9**

---

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| Word Mark | **U.S. CHAMBER OF COMMERCE** |
| Goods and Services | IC 042. US 100. G & S: ASSOCIATION SERVICES, NAMELY PROMOTING THE INTEREST OF BUSINESS MEN AND WOMEN. FIRST USE: 19151204. FIRST USE IN COMMERCE: 19151204 |
| Mark Drawing Code | (1) TYPED DRAWING |
| Serial Number | 73550166 |
| Filing Date | July 26, 1985 |
| Current Filing Basis | 1A |
| Original Filing Basis | 1A |
| Published for Opposition | October 11, 1988 |
| Change In Registration | CHANGE IN REGISTRATION HAS OCCURRED |
| Registration Number | 1522157 |
| Registration Date | January 24, 1989 |
| Owner | (REGISTRANT) CHAMBER OF COMMERCE OF THE UNITED STATES, THE CORPORATION D.C. 1615 H STREET, N.W. WASHINGTON D.C. 20062 |
| Attorney of Record | Edward T. Colbert |
| Disclaimer | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CHAMBER OF COMMERCE" APART FROM THE MARK AS SHOWN |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL-2(F) |
| Affidavit Text | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20080822. |

**EXHIBIT 1**

| | |
|---|---|
| **Renewal** | 1ST RENEWAL 20080822 |
| **Live/Dead Indicator** | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP   PREV LIST   CURR LIST

NEXT LIST   FIRST DOC   PREV DOC   NEXT DOC   LAST DOC

# EXHIBIT 2

Trademark Electronic Search System (TESS)



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

TESS was last updated on Sat Oct 24 04:01:50 EDT 2009

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

Logout   Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | ( Use the "Back" button of the Internet Browser to return to TESS)

## Typed Drawing

| | |
|---|---|
| **Word Mark** | THE SPIRIT OF ENTERPRISE |
| **Goods and Services** | IC 035. US 101. G & S: ASSOCIATION SERVICES-NAMELY PROMOTING THE INTERESTS OF BUSINESS MEN AND WOMEN. FIRST USE: 19811201. FIRST USE IN COMMERCE: 19811201 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 73822341 |
| **Filing Date** | August 29, 1989 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | December 26, 1989 |
| **Registration Number** | 1588136 |
| **Registration Date** | March 20, 1990 |
| **Owner** | (REGISTRANT) CHAMBER OF COMMERCE OF THE UNITED STATES CORPORATION D.C. 1615 H STREET NW WASHINGTON D.C. 20062 |
| **Attorney of Record** | Edward T. Colbert |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20000814. |
| **Renewal** | 1ST RENEWAL 20000814 |
| **Live/Dead Indicator** | LIVE |

**EXHIBIT 2**

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP |

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT 3



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Sat Oct 24 04:01:50 EDT 2009*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP |

[ Logout ] Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | THE SPIRIT OF ENTERPRISE U.S. CHAMBER OF COMMERCE |
| **Goods and Services** | IC 042. US 100. G & S: ASSOCIATION SERVICES - NAMELY PROMOTING THE INTEREST OF BUSINESS MEN AND WOMEN. FIRST USE: 19841205. FIRST USE IN COMMERCE: 19850100 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 01.01.13 - Stars - multiple stars with five points<br>03.15.01 - Eagles<br>03.15.24 - Stylized birds and bats<br>26.01.17 - Circles, two concentric; Concentric circles, two; Two concentric circles<br>26.01.21 - Circles that are totally or partially shaded. |
| **Serial Number** | 73808794 |
| **Filing Date** | June 26, 1989 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | December 12, 1989 |
| **Registration Number** | 1586228 |
| **Registration Date** | March 6, 1990 |
| **Owner** | (REGISTRANT) CHAMBER OF COMMERCE OF THE UNITED STATES CORPORATION D.C. 1615 H STREET, N.W. WASHINGTON D.C. 20062 |
| **Attorney of Record** | William M. Merone |
| **Prior Registrations** | 1522157 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CHAMBER OF COMMERCE" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |

**EXHIBIT 3**

Trademark Electronic Search System (TESS)

| | |
|---|---|
| **Register** | PRINCIPAL-2(F)-IN PART |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20090916. |
| **Renewal** | 2ND RENEWAL 20090916 |
| **Live/Dead Indicator** | LIVE |
| **Distinctiveness Limitation Statement** | AS TO "U.S. CHAMBER OF COMMERCE" |

TESS HOME    NEW USER    STRUCTURED    FREE FORM    BROWSE DICT    SEARCH OG    TOP    HELP

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY