**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>JACQUES SERVIN (aka ANDY BICHLBAUM aka HINGO SEMBRA), IGOR VAMOS (aka MIKE BONANNO), SUPPORT AND COMMITMENT, INC., DAVID SIEVERS, MORGAN GOODWIN, SARAH MURPHY, and JOHN and JANE DOES NOS. 1-20, )<br><br>Defendants. ) | Case No.: 1:09-cv-02014 - (RWR) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO DEFENDANTS' MOTION**
**FOR A STAY OF DISCOVERY AND RULE 26 DISCLOSURES**

Plaintiff, Chamber of Commerce of the United States of America (the "Chamber"),

respectfully submits this Memorandum of Points and Authorities in Opposition to Defendants'

Motion for Stay of Discovery and Rule 26 Disclosures ("Motion for Stay").  As discussed below,

Defendants have not carried their burden of justifying the necessity or appropriateness of a stay

of discovery.  Accordingly, the Chamber requests that the Court deny the Motion for Stay.[1]

---

[1] Pursuant to the Court's Minute Order entered on January 15, 2010, Plaintiff will separately oppose Defendants' Motion to Dismiss on February 5, 2010.

## BACKGROUND

1.      This case involves commercial identity theft.  Defendants have misappropriated the Chamber's name, registered trademarks, and copyrighted software, in an effort to masquerade as the Chamber on the Internet and in the media.

2.      Specifically, Defendants fraudulently issued a press release attributed to the Chamber, and fraudulently issued written remarks attributed to the Chamber's President; both of these documents used the Chamber's marks without authorization.  *See* First Am. Compl. ¶¶ 15-16, 20, 23; *see also* Exhibits A and C to Defendant Servin's Declaration in Support of Motion to Dismiss ("Servin Dec.") (docket no. 15-1).  Defendants also created, and referred members of the public to, a Web site in the Chamber's name (www.chamber-of-commerce.us) that appeared identical to, and purported to be, that of the Chamber, and which reproduced the two documents described above.[2]  *See* First Am. Compl. ¶¶ 19-20, 24; Servin Dec. Exhibits A & C.  The fake Web site also used the Chamber's marks and copyrighted material without authorization, and even falsely claimed a 2009 Chamber copyright at the bottom of each page.  First Am. Compl. ¶ 20; Servin Dec. Exhibits A & C.  Moreover, the masquerading Web site copied embedded software elements from the Chamber's actual Web site, so that visitors who "clicked" links on the fraudulent pages were taken to the authentic Chamber Web site without realizing that they had passed from a fraudulent source to an authentic source.  First Am. Compl. ¶¶ 20, 30.

3.      The Chamber has requested that Defendants agree to refrain from using the Chamber's marks and misleading domain name during this litigation.  Through their counsel,

---

[2] Defendants continued to use the fake domain, which is owned by Defendants Servin and Vamos through their alter ego corporation, Support and Commitment, Inc., even after the Chamber discovered the Web site and issued a take-down request to the host.  *See* First  Am. Compl. ¶¶ 4, 30.  Around November 6, 2009, Defendants replaced the fake Chamber page with a new press release.  *See* letter from T. Hughes to M. Zimmerman (Nov. 9, 2009) (attached as Exhibit A).

Defendants have refused, claiming that it is their "right" to use the Chamber's intellectual property. *See* letter from Defendants' counsel, R. Corn-Revere, to Chamber's counsel, W. Potts (Nov. 17, 2009) (attached as Exhibit B).

4.     Defendants have engaged in this conduct as part of a systematic scheme to promote their movie, generate sales of merchandise and tickets, and damage the Chamber. *See* First Am. Compl. ¶¶ 2-3, 12-16, 26, 28, 32, 33.

5.     Because the Chamber is the leading advocate for the interests of American businesses, and lobbies on their behalf, *see id.* ¶ 1, it is critical that the business world and consumers are not persuaded by Defendants' ruse or led to believe that the Chamber has made statements that it has not made.

6.     Defendants' unauthorized and wrongful use of the Chamber's intellectual property has created confusion and caused the Chamber to incur costs. *See id.* ¶ 34.  Because Defendants have expressly refused to cease their wrongful conduct, the Chamber is at risk of ongoing harm.  Moreover, although the Chamber knows (and Defendants admit) that Defendants have misappropriated the Chamber's intellectual property, the Chamber has no way of knowing the extent and scope of the dissemination of the infringing materials.

7.     As a result of Defendants' actions and the resulting harm to the Chamber, the Chamber promptly filed this lawsuit on October 26, 2009.  The Chamber asserts various claims under the Lanham Act, the D.C. Consumer Protection Procedures Act and the common law.

8.     After first seeking and obtaining a nearly six-week extension to respond to the Chamber's First Amended Complaint (which was filed on November 6, 2009), Defendants filed a Motion to Dismiss.  Defendants' primary argument in support of the Motion to Dismiss is that

the First Amendment protects their misappropriation of the Chamber's intellectual property.  In urging this position, Defendants characterize their illegal actions as "parody."

9.      To prevent a Rule 26(f) conference, Defendants also filed a motion to stay all discovery until the Court rules on the Motion to Dismiss.  They claim that "allowing Plaintiff to conduct discovery before the Court has addressed the constitutional free speech issues on which Defendants' Motion [to Dismiss] is based would diminish those rights."  Motion for Stay ¶ 9.

## ARGUMENT

10.     The courts do not favor motions to stay discovery.  *E.g.*, *Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989); *Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 637 (M.D.N.C. 1988); *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997).  As the court explained in *Kron Medical Corp.*, "In considering such motions, the Court needs to remain mindful of its responsibility to expedite discovery and minimize delay.  Disruption or prolongation of the discovery schedule is normally in no one's interest."  119 F.R.D. at 637-38.

11.     A motion to stay discovery is, in essence, a motion for a protective order prohibiting or limiting discovery under Fed. R. Civ. P. 26(c).  *Kron Medical Corp.*, 119 F.R.D. at 637; *Feldman*, 176 F.R.D. at 652; *see also People With AIDS Health Group v. Burroughs Wellcome Co.*, No. 91-0574, 1991 WL 221179, at *1 (D.D.C. Oct. 11, 1991) (entertaining motion to stay discovery under Fed. R. Civ. P. 26(c)) (copy attached as Exhibit C).  As such, the moving party bears the burden of showing good cause for the stay.  Fed. R. Civ. P. 26(c)(1); *Kron Medical Corp.*, 119 F.R.D. at 637; *Beecham v. Socialist People's Libyan Arab Jamahiriya*, 245 F.R.D. 1, 3 (D.D.C. 2007) ("'[T]he proponent of a stay bears the burden of establishing its need.'") (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *People With AIDS Health Group*, 1991 WL 221179, at *1 ("The party seeking to stay discovery has the burden of justification.").  The party seeking the stay must provide "a particular and specific demonstration of fact, as

4

distinguished from conclusory statements, in order to establish good cause." *Twin City Fire Ins. Co.*, 124 F.R.D. at 653 (quoted in *People With AIDS Health Group*); *see also Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) ("The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements.").

12.     Defendants have not carried the burden of justifying a stay of discovery.  They support their Motion for Stay with three unsupported, bald claims.  First, they contend that their Motion to Dismiss is likely to be granted, thus terminating the litigation.  *See* Motion for Stay ¶¶ 1, 9.  Second, they assert that their First Amendment rights will be impaired if discovery goes forward before their Motion to Dismiss is resolved.  *Id.* ¶ 2.  Third, they postulate that "the discovery in this case is likely to be extensive, and very costly," and they further hypothesize that "if discovery disputes arise while the motion to dismiss is pending it will tax the court's resources." *Id.* ¶ 3.  Defendants offer no factual support for any of these contentions.

13.     As an initial matter, a pending motion to dismiss does not, in and of itself, warrant a stay of discovery.  *People With AIDS Health Group*, 1991 WL 221179, at *1; *Twin City Fire Ins. Co.*, 124 F.R.D. at 653; *Ohio Bell Tel. Co. v. Global Naps Ohio, Inc.*, No.2:06-cv-0549, 2008 WL 641252, at *1 (S.D. Ohio Mar. 4, 2008) (copy attached as Exhibit D).  "Had the Federal Rules contemplated that a motion to dismiss under Fed.R.Civ.Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect.  In fact, such a notion is directly at odds with the need for expeditious resolution of litigation." *Gray*, 133 F.R.D. at 40; *accord Ohio Bell Tel.*, 2008 WL 641252, at *1 (citing *Gray*).

14.     To be sure, a court may "stay discovery when it is *convinced* that the plaintiff will be unable to state a claim for relief." *Twin City Fire Ins. Co.*, 124 F.R.D. at 653 (internal

quotation marks, citation omitted; emphasis in original); *see also Feldman*, 176 F.R.D. at 653

(observing that motion to dismiss must be "so clear on its face [that] there appears to be an

immediate and clear possibility that it will be granted") (internal quotation marks, citation

omitted; alteration in original).[3]  A "bald assertion that [the] motion to dismiss will be granted,"

however, is insufficient to stay discovery.  *People With AIDS Health Group*, 1991 WL 221179,

at *1; *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 3 n.4

(D.D.C. 2001) (citing *People With AIDS Health Group*).  Defendants offer no more than the

conclusory statement that their pending motion "is likely to result in the dismissal of Plaintiff's

claims . . . ."  (Motion for Stay ¶ 9.)  That is not enough to support a stay of discovery.

15.     In any event, Defendants are wrong.  Their Motion to Dismiss is doomed to fail,

because it is premised on the misguided and inaccurate notion that the First Amendment offers

absolute protection for their illegal actions.  As the Chamber will discuss at length in its

opposition to Defendants' Motion to Dismiss, there is no "absolute right" to use someone else's

intellectual property as part of a parody or any other work of artistic expression.  *E.g.*, *Anheuser-*

*Busch, Inc. v. Balducci Publ'ns, Inc.*, 28 F.3d 769, 775-76 (8th Cir. 1994) (rejecting the

argument that there is an "absolute" First Amendment right to use another person's trademarks

as part of a parody); *Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1228 (7th Cir. 1993)

("[P]arody is not an affirmative defense but an additional factor in the analysis."); *Cliffs Notes,*

*Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.*, 886 F.2d 490, 493-94 (2d Cir. 1989)

("[T]rademark protection is not lost simply because the allegedly infringing use is in connection

with a work of artistic expression.") (internal quotation marks, citation omitted); *People for the*

---

[3] The *Gray* court observed that the idea of granting a stay because the defendant asserts
that dismissal is likely "would require the court to make a preliminary finding of the likelihood

*Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 366 (4th Cir. 2001) (holding that, if a parody causes confusion, especially as to the source, it is actionable trademark infringement); *Pfizer Inc., v. Sachs*, No. 08-cv-8065, 2008 WL 5596131 (S.D.N.Y. Nov. 14, 2008) (observing that "Courts have repeatedly held the Lanham Act applies to non-commercial and even political activity") (copy attached as Exhibit E); *SMJ Group, Inc. v. 417 Lafayette Rest. LLC*, 439 F. Supp. 2d 281, 291 (S.D.N.Y. 2006) ("[T]he fact that defendants are engaged in some critical expression does not shield all of defendants' conduct from application of the Lanham Act.  The relevant issue is not the content of defendants' message, but rather defendants' use of plaintiffs' marks. . . .  The First Amendment protects an individual's right to speak out against a markholder, but it does not permit an individual to suggest that the markholder is the one speaking."); *MGM-Pathe Commc'ns Co. v. Pink Panther Patrol*, 774 F. Supp. 869, 877 (S.D.N.Y. 1991).("[Defendants] contend that because the Patrol is engaged in political speech, it is less subject to the trademark laws.  There is no legal support for this position.  The seriousness and virtue of a cause do not confer any right to the use of the trademark of another."); *Christian Sci. Bd. of Dirs. v. Robinson*, 123 F. Supp. 2d 965, 971 (W.D.N.C. 2000) ("Defendant's use of another entity's mark is entitled to First Amendment Protection when his use of that mark is part of a communicative message, not when it is used to identify the source of a product.") (internal quotation marks, citation omitted); *Browne v. McCain*, 612 F. Supp. 2d 1125, 1131 (C.D. Cal. 2009) ("[C]ontrary to [defendant's] assertions, courts have recognized that the Lanham Act applies to noncommercial (i.e., political) *and* commercial speech.) (emphasis in original, internal citations omitted); *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1077 (C.D. Cal. 1998) ("[C]ases of parody or competing artistic titles should not be singled out

of success on the motion to dismiss," which "would circumvent the procedures for resolution of

for preferential treatment where the interests underlying the Lanham Act and the First Amendment are in conflict.  Neither the language in the relevant case law nor public policy supports such a distinction.") (internal quotation marks, citation omitted).

16.     In fact, a First Amendment defense does not dispose with the requirement to make a *factual determination* of whether Defendants' use of the Chamber's marks creates a "likelihood of confusion."  *See Anheuser-Busch*, 28 F.3d at 776 ("A parody creating a likelihood of confusion may be subject to a trademark infringement action."); *United We Stand America, Inc. v. United We Stand, America New York, Inc.,* 128 F.3d 86, 93 (2d Cir. 1997) (holding that the appropriation of another's mark that causes consumer confusion is not protected by the First Amendment); *Pfizer Inc.*, 2008 WL 5596131 ("As a matter of law, the likelihood of confusion negates any claimed First Amendment defense to trademark infringement."); *Browne*, 612 F. Supp. 2d at 1131 ("[T]he Act's purpose of reducing consumer confusion supports application of the Act to political speech, where the consequences of widespread confusion as to the source of such speech could be dire.") (emphasis in original) (internal citations omitted).

17.     Whether there is such a "likelihood of confusion" is a question of fact.  *E.g.*, *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 27 (1st Cir. 1987) (denying motions for summary judgment and leaving "the factual question of 'likelihood of confusion' for resolution at trial"); *Nike*, 6 F.3d at 1232 (remanding case because likelihood of confusion was "a disputed issue of fact); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 967 (10th Cir. 1996) (holding that "likelihood of confusion" is a question of fact).  The Chamber has clearly alleged not only that Defendants' use of its marks created a likelihood of confusion, but it also alleges that *actual* confusion occurred and that Defendants *intended to cause* such

---

such a motion."  133 F.R.D. at 40.

confusion. *See, e.g.*, First Am. Compl. ¶¶ 23, 24, 48, 56.[4]  In short, Defendants' invocation of the First Amendment is not a question of law that can be decided on the pleadings.  Accordingly, Defendants are *unlikely* to prevail on their Motion to Dismiss, and their request that discovery should be postponed has no merit.

18.     Furthermore, Defendants have offered no support for their claim that discovery will be extensive and costly, and there is no reason to presume that it must be prolonged or costly.  "Bare assertions that discovery will be unduly burdensome . . .are insufficient to justify the entry of an order staying discovery."  *Beecham*, 245 F.R.D. at 3 (internal quotation marks, citation omitted).  Here, the parties have not even conferred about the discovery that is necessary.  Because the Complaint is largely premised on events that the Defendants have admitted (or, at least, which they have bragged about in public places), many of the allegations of the Complaint likely will not even be contested.  Accordingly, Defendants have "failed to demonstrate beyond mere allegations that resources will be conserved by granting the stay."  *See People With AIDS*, 1991 WL 221179, at *1 (denying motion to stay discovery).

19.     Defendants also claim that discovery will burden their First Amendment right to free speech.  As demonstrated above, Defendants cannot establish — on a Motion to Dismiss — that their activities are even protected by the First Amendment.  In any event, they make no effort to describe, detail or quantify the purported burden on their free speech rights.  Instead, they misstate legal authority to argue that the purported implication of the First Amendment requires a stay of discovery.  Defendants claim:

---

[4] Moreover, the Chamber has pleaded, and Defendants admit, that Defendants used the Chamber's marks precisely to convey the impression that the Chamber made the false statements attributed to it.  *E.g.*, Am. Compl. ¶¶ 15-23; Brief in Support of Motion to Dismiss at 1, 4.  In *United We Stand*, the Second Circuit held that the use of another entity's mark "as a source identifier" is not protected by the First Amendment.  128 F.3d at 92.

> In *Moldea v. New York Times Co.*, 137 F.R.D. 1 (D.D.C. 1990), the court
> recognized that "the threat to the First Amendment is sufficient good cause to stay
> the discovery process pending resolution of a dispositive motion," and that an
> order staying discovery under Rule 26(c) of the Federal Rules of Civil Procedure
> was appropriate in order to "avoid the time and expense of responding to inquiries
> that will have no effect on the resolution of the forthcoming motion."

Brief in Support of Stay ¶ 10.  But Defendants have mischaracterized *Moldea*.  The language that

they quote is actually *the Court's characterization of the defendant's position in that case.*  It

was not a part of the Court's holding.  In fact, the Court actually stated that First Amendment

issues "standing alone would not automatically entitle defendant to a stay of discovery."

*Moldea*, 137 F.R.D. at 2.  The Court in *Moldea* granted a stay of discovery pending a motion for

*summary judgment* — not a motion to dismiss — because all that it needed to determine the

defamatory nature of a book review was an examination of the review and the book.  *Id.*

Notably, the parties had already engaged in some discovery.  *Id.* at 1.  In the other case that the

Defendants cite for the proposition that "[c]ourts often stay or limit discovery in first amendment

cases to avoid an undue burden on freedom of speech," the Court did not even raise the First

Amendment or freedom of speech in upholding the stay of discovery.  *See White v. Fraternal

Order of Police*, 909 F.2d 512, 517 (D.C. Cir. 1990) (concluding merely that the district court

did not abuse its discretion in implementing a stay).

 20.    Even if Defendants had made some showing that they might prevail on their

Motion to Dismiss, or that discovery would somehow be burdensome, other factors weigh

strongly against staying discovery.  *See Chavous*, 201 F.R.D. at 3 (weighing the possibility that a

dispositive motion would be granted against the harm produced by delaying discovery).  ***First***,

Plaintiff requested a prompt Rule 26(f) conference as early as November 6, 2009.  *See* letter from

M. Mueller to Defense counsel M. Zimmerman dated Nov. 6, 2009 (attached as ex. F).  Defense

counsel have never agreed to meet to discuss the scope of discovery.  ***Second***, Plaintiff is

10

concerned that evidence is not being preserved.  Each summons was accompanied by a letter from Plaintiff's counsel as to the scope of evidence (much of which is electronic) that needs to be maintained.  On November 9, 2009, after Defendants substituted material on the fake Web site at www.chamber-of-commerce.us, Plaintiff's counsel specifically requested assurances that Defendants would preserve evidence.  *See* letter from T. Hughes to M. Zimmerman (Nov. 9, 2009) (Exhibit A).  Defendants' counsel did not respond, and have never given such assurances.  Given the continually changing nature of the information on the infringing Web site, Plaintiff's counsel is seriously concerned about the loss of evidence.  ***Third***, as noted above, Defendants insist that they have a "right" to continue to use the Chamber's marks and software.  Prolonging these proceedings will only exacerbate and increase the damages that the Chamber may incur from the unauthorized use of the Chamber's intellectual property.  Moreover, the Chamber cannot take any efforts to mitigate (or calculate) its damages, without knowing the scope of the dissemination of the falsely attributed statements, and the extent to which they might still be available.  ***Finally***, a stay is contrary to the public interest.  Defendants' conduct in misappropriating the Chamber's intellectual property deceives the public.  A stay of discovery will only extend the deception.  It is in the public's interest to promote the prompt resolution and remedy of instances of commercial identity theft and misappropriation of intellectual property.

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendants' Motion for Stay of Discovery and Rule 26 Disclosures.

Dated:  January 22, 2010


HUNTON & WILLIAMS, LLP

*/s/ Michael J. Mueller*
RICHARD L. WYATT, JR.
(D.C. Bar No. 424775)
MICHAEL J. MUELLER
(D.C. Bar No. 412025)
THOMAS M. HUGHES
(D.C. Bar No. 460134)
WILLIAM E. POTTS, JR.
(D.C. Bar No. 945824)
1900 K Street, NW
Washington, DC 20006
Tel: 202-955-1500
Fax: 202-778-2201

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via

electronic mail and U.S. Mail postage pre-paid this 22nd day of January, 2010 upon:

> Robert Corn-Revere, Esq.
> Davis Wright Tremaine, LLP
> 1919 Pennsylvania Avenue, N.W., Suite 200
> Washington, D.C. 20006
>
> Matthew Zimmerman, Esq.
> Electronic Frontier Foundation
> 454 Shotwell Street
> San Francisco, CA 94110
>
> Counsel for Defendants

By: */s/ Michael J. Mueller* _____
  Michael J. Mueller

13