IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 1:09-cv-02014 - (RWR) |
| JACQUES SERVIN (aka ANDY BICHLBAUM aka HINGO SEMBRA), IGOR VAMOS (aka MIKE BONANNO), SUPPORT AND COMMITMENT, INC., DAVID SIEVERS, MORGAN GOODWIN, SARAH MURPHY, and JOHN and JANE DOES NOS. 1-20, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY AND, IN THE ALTERNATIVE, NOTICE OF SUPPLEMENTAL AUTHORITY**

The Court should disregard Defendants' Notice of Supplemental Authority citing this Court's recent decision in *Farah v. Esquire*, Case No. 11-cv-1179(RMC) (D.D.C. June 4, 2012). As explained below and previously in Plaintiff's Opposition to Defendants' Motion to Dismiss, cases such as *Farah* are wholly inapposite because, unlike this case, they do not involve the use of stolen property to deceive the public, and they do not involve commercial speech.

**BACKGROUND**

*Farah* stemmed from the controversy concerning President Barack Obama's birthplace. *Id*. at 1-2. The plaintiffs were the author and publisher of a book alleging that President Obama was not born in the United States. Shortly before the book's scheduled release, President Obama's long form birth certificate was posted on the White House website. Despite this newly disclosed evidence that President Obama was born in the United States, the plaintiffs released their book as scheduled.

The day after the book was released, Esquire.com published a satirical blog post on its website—on a page tagged as "humor"—that claimed to be based on an exclusive interview with the book's author.  *Id*. at 5, 14.  The headline of the post stated "Breaking: Jerome Corsi's Birther Book Pulled From Shelves!"  *Id*. at 5.  A siren, similar to the one used on the conservative Drudge Report website, accompanied the post.  *Id*. at 14.  The post claimed that the plaintiffs had announced "plans to recall and pulp the entire 200,000 first printing run of the book," a figure the court noted "is an exaggerated number for a first printing."  *Id*.  The post also referred to a fake book, allegedly authored by one of the plaintiffs, called "Capricorn One: NASA, JFK, and the Great 'Moon Landing' Cover-Up."  *Id* at 6.  In reality, "Capricorn One" is a 1978 movie starring O.J. Simpson about a government Mars landing hoax.  *Id*. at 14.  Thus, it was evident that the post was satiric, and was not meant to be construed as a statement of fact.

The plaintiffs sued Esquire, asserting claims under the Lanham Act, as well as defamation, tortious interference, and false light invasion of privacy.  The Court dismissed the case, largely because of its determination that the article was "satirical speech on a matter of public interest."  *Id*. at 19.  It also concluded that the article did not contain commercial speech, and was therefore not actionable under the Lanham Act.  *Id*. at 18-19.[1]

### DISCUSSION

*Farah* is inapposite to this case because (1) the defendants there did not use stolen property to deceive the public, as did Defendants here; and (2) the defendants in *Farah* did not engage in commercial speech, as did Defendants here.

---

[1] Another major ground upon which the court dismissed *Farah* was the District of Columbia's Anti-SLAPP Act.  Here, as Defendants concede at page 2 of their Notice of Supplemental Authority, the Anti-SLAPP Act is not at issue.

**I.     Defendants Used Stolen Property To Deceive The Public**

Defendants' use of stolen property to deceive the public here distinguishes this case from *Farah*, in which the Court found that the defendants had merely published a blog post that "bore indicia of its satiric nature." *Id*. at 14.  In this case, on the other hand, Defendants engaged in an elaborate scheme to avoid any indication that their activities were fraudulent.

As part of their scheme to deceive the public, Defendants here registered the domain name "chamber-of-commerce.us" and set up a website that appeared to be identical to the Chamber's, but contained a fake "Press Releases" and a fake "Speeches" page.  First Am. Compl. ¶¶ 18-19.  This website was not a parody site that merely resembled the Chamber's website.  Rather, Defendants' website used computer code that they had *stolen* from the Chamber's website. *Id*. at ¶ 20.  As a result, members of the public who "clicked" on any links from the fraudulent pages would be taken to the Chamber's true website without realizing it.  *Id*. Defendants' use of the stolen code made it virtually impossible for members of the public to distinguish between the Chamber's authentic website and the fraudulent one set up by Defendants, making it appear as though the fraudulent speeches and press releases were issued by the Chamber.

In 2010, the Chamber submitted a complaint to the National Arbitration Forum requesting the transfer of the "chamber-of-commerce.us" domain name from "Albert Bauer" to the Chamber.  *See* decision in *Chamber of Commerce of the United States v. Albert Bauer*, FA1007001335605 (Nat. Arb. Forum September 24, 2010), attached hereto as Exhibit 1.  "Albert Bauer," who on information and belief is fictitious, was one of many registrants to whom Defendants had transferred the domain name to prevent the Chamber from acquiring it.  *Id*. at 7. The tribunal found that the "chamber-of-commerce.us" domain name is "confusingly similar to

the Chamber's trademark, as thousands of people landed on the fraudulent web site before being directed to the Chamber's real web site." *Id*. at 3.  It also concluded that the website was part of a "collective scheme to manipulate and deceive the public." *Id*. at 7.  Guided by these conclusions, the arbitral tribunal ordered the transfer of the offending domain name — *which is the same fraudulent website at issue in the instant lawsuit* — to the Chamber.

The fraudulent website was merely one part of Defendants' larger scheme to deceive the public.  After creating the website, Defendants contacted members of the media to announce a press conference, which was to be held at the prestigious National Press Club.  First Am. Compl. ¶ 21.  The "contact person" for the press conference was listed as Erica Avidus, a fictitious person.  *Id*.  A contact number was listed for "Avidus," which went to voicemail with the greeting "You have reached Erica Avidus at the Chamber.  Please leave a message."  *Id*.  During the conference, Defendants used the Chamber's logo on their press release and on the podium.  They also planted fake "reporters" to make the press conference seem authentic.  *Id*. at ¶ 23.  It is clear from these actions that, unlike the defendants in *Farah*, Defendants here made every effort in the early part of the scheme to conceal the fact that their efforts were part of an elaborate hoax, even using stolen property to do so.  Indeed, they *continued* to use the stolen property well after the "press conference" aspect of the scheme was disclosed *by the Chamber* (not the Defendants themselves), whereupon the Defendants retroactively started treating it as "parody." Accordingly, *Farah* is inapposite.

## II.     Defendants Engaged In Commercial Speech

In *Farah*, the Court found that the blog post did not involve commercial speech, but was rather "an expression of views regarding the dispute" over whether President Obama was born in the United States.  But in that case, the plaintiffs had little evidence of a direct commercial

motive associated with the blog post, such as the promotion or sale of a product or service. Accordingly, the Court found that the blog post was merely "satirical speech on a matter of public interest." On that ground, it dismissed the plaintiffs' Lanham Act claim.

Here, by contrast, Defendants' activities can be tied to a clear commercial motive: promoting their movie, "The Yes Men Fix the World," and selling merchandise. Defendants Servin and Vamos held their fraudulent press conference *only one day* before the theatrical release of their movie. First Am. Compl. ¶ 15. After the Chamber exposed their hoax, Defendants sought to exploit it for commercial gain. They had a whirlwind interview tour with, among others, MSNBC, NPR, CNN, The New York Times, Mother Jones, Dow Jones Newswire, and Market Wire, in which they discussed their hoax and publicized their movie. *Id*. at ¶ 28. For example, when Vamos was interviewed on MSNBC, a banner appeared at the bottom of the screen announcing that "THE YES MEN FIX THE WORLD IS NOW IN THEATERS." *Id*. During the interview, Vamos stated that the "movie is called the Yes Men Fix The World . . . and you can see where it's playing at yesmenfixtheworld.com." *Id*. All of the free publicity they ginned up helped drive business to Servin's and Vamos' website, which sells merchandise including t-shirts, a book, and their 2004 movie. Thus, unlike the defendants in *Farah*, who published one blog post with no apparent purpose other than satirizing the plaintiffs' views of President Obama's birthplace, Defendants here engaged in a complex and fraudulent scheme that was plainly motivated by profit. Under these circumstances, the Lanham Act applies.

Dated:  June 12, 2012

HUNTON & WILLIAMS, LLP

          */s/ Michael J. Mueller*_____
RICHARD L. WYATT, JR.
(D.C. Bar No. 424775)
MICHAEL J. MUELLER
(D.C. Bar No. 412025)
WILLIAM E. POTTS, JR.
(D.C. Bar No. 945824)
2200 Pennsylvania Ave., NW
Washington, DC 20037
Tel: 202-955-1500
Fax: 202-778-2201

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic mail and U.S. Mail postage pre-paid this 12th day of June, 2012 upon:

>Robert Corn-Revere, Esq.
>Lisa Beth Zycherman, Esq.
>Davis Wright Tremaine, LLP
>1919 Pennsylvania Avenue, N.W., Suite 200
>Washington, D.C. 20006
>
>Bruce E. H. Johnson, Esq.
>Ambika K. Doran, Esq.
>Davis Wright Tremaine, LLP
>1201 Third Avenue, Suite 2200
>Seattle, WA 98101-3045
>
>Thomas R. Burke, Esq.
>Davis Wright Tremaine, LLP
>505 Montgomery Street, Suite 800
>San Francisco, CA 94111-6533
>
>Matthew Zimmerman, Esq.
>Corynne McSherry, Esq.
>Electronic Frontier Foundation
>454 Shotwell Street
>San Francisco, CA 94110
>
>Counsel for Defendants
>
>Deepak Gupta, Esq.
>Gregory A. Beck, Esq.
>Public Citizen Litigation Group
>1600 20th Street, NW
>Washington, DC 20009
>
>Amicus Counsel

By: _____/s/_____
Michael J. Mueller